UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| SUSAN WELCHEL, individually, and as personal representative of the ESTATE OF LANE GREY WELCHEL<br><br>Plaintiffs,<br><br>v.<br><br>CAMERON R-I SCHOOL DISTRICT, BOARD OF EDUCATION OF CAMERON R-I SCHOOL DISTRICT, DR. MATT ROBINSON, and TIFFANI COLLINS,<br><br>Defendants. | Case No. 5:19-cv-06012-FJG |

**SUGGESTIONS IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE CERTAIN TESTIMONY AND OPINIONS FROM DR. ROY LUBIT**

**COMES NOW** Defendants, Cameron R-1 School District ("District"), the Board of Education of the Cameron R-1 School District ("Board"), District Superintendent Dr. Matt Robinson ("Robinson") and District Middle School Principal Tiffani Collins ("Collins"), (hereinafter collectively referred to as "Defendants"), by and through the undersigned counsel, and submits the following Suggestions in Support of their Motion to Exclude Testimony and Opinions from Plaintiffs' Expert Dr. Roy Lubit.

**Introduction and Background**

On August 1, 2019, Plaintiffs served their expert disclosures in the instant case, identifying Dr. Lubit as a retained expert under Fed. R. Civ. P. 26(a)(2)(B) and submitted his report regarding his opinions and proposed testimony. *See* Dkt. No. 31 and 31-1.[1] At the

---
[1] For the convenience of the Court, a copy of Dr. Lubit's report, as included in Plaintiffs' Expert Disclosure, is attached and incorporated by reference as Exhibit A.

00353666.1                                                  1

beginning of his report, Dr. Lubit provided the following information in regards to his retention by Plaintiffs and his expertise:

> I was asked by Chris Dove, lawyer for Lane Welchel's mother to review records and to assess the reasons for his suicide.
>
> I am a psychiatrist board certified in Psychiatry, board certified in Child and Adolescent Psychiatry, and board certified in Forensic Psychiatry. I have particular experience concerning emotional trauma and have lectured and published on this topic.

*Exhibit A*, pg. 1.

Throughout his report, however, Dr. Lubit offers opinions far outside of his stated expertise. Apart from any relation to child or adolescent psychiatry, Dr. Lubit opines on the following topics:

- The District's discipline policies regarding various types of student misconduct;
- Application of the District's discipline policies regarding various types of student misconduct;
- Practice and procedure of District investigation into allegations of student misconduct;
- The likelihood of Lane Welchel committing a specific school infraction;
- The District's anti-bullying policies;
- Application of the District's anti-bullying policies;
- Practice and procedure of District investigation into allegations of student bullying; and
- Comparison of how the District applied its various policies to Lane Welchel and unknown other students.

*Exhibit A*, pgs. 10-12.

Clearly, these opinions do not relate to Dr. Lubit's stated expertise. Dr. Lubit even went so far as to admit that "I am not an expert on school policy," but continued on to try and provide

such expert testimony. *See Exhibit A*, pg. 10. Moreover, not only did he offer the opinions without expertise, he did so without sufficient facts or data in support.

Dr. Lubit's opinions related to the District's policy and procedures, as well as the District's application of such policies and procedures, should be excluded.

**Argument**

**A.     Legal Standard.**

The admissibility of expert testimony is governed by Federal Rule of Evidence ("FRE") 702. FRE 702 mandates that a proposed expert witness be qualified in order to testify as an expert witness. A witness can be qualified by knowledge, skill, experience, training, or education. *See* FRE 702. Further, "it is the responsibility of the trial judge to determine whether a particular expert has sufficient specialized knowledge to assist jurors in deciding the specific issues in the case." *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001) (*citing Kumho Tire Co. Ltd. V. Carmichael*, 526 U.S. 137 (1999)).

If a witness is qualified, they must also meet the additional requirements of FRE 702 in order to testify as an expert. FRE 702 further provides that a witness who is qualified as an expert may testify only if all four of the following criteria are met:

>   (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
>   (2) the testimony is based on sufficient facts or data;
>
>   (3) the testimony is the product of reliable principles and methods; and
>
>   (4) the expert has reliably applied the principles and methods to the facts of the case.

FRE 702.

00353666.1                                              3

Case 5:19-cv-06012-FJG   Document 41   Filed 10/22/19   Page 3 of 10

In the seminal U.S. Supreme Court case concerning expert testimony, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court charged trial courts with the task of acting as "gatekeepers" to screen expert testimony under FRE 702. *Daubert,* 509 U.S. at 589-93; *see also Anderson v. Raymond Corp.*, 340 F.3d 520, 523 (8th Cir. 2003) (finding that under *Daubert*, district courts must act as gatekeepers to insure that proffered expert testimony is both relevant and reliable).

Before allowing an expert to testify, the trial judge must make a preliminary assessment of whether a proffered expert's methodology is both scientifically valid and applicable to the case. *Travelers Property Casualty Co. of America v. Nat'l Union Ins. Co. of Pittsburgh, PA*, 557 F.Supp.2d 1040, 1048 (W.D. Mo. 2008) (citing *Daubert*, 509 U.S. at 592-93); *see also United States v. Johnson*, 56 F.3d 947, 952 (8th Cir. 1995) (holding the "court must determine (1) whether the testimony is based upon reliable scientific knowledge, and (2) whether it will assist the trier of fact"). In *Kuhmo Tire*, the Supreme Court held that the gatekeeping obligation under *Daubert*, which requires inquiry into the relevance and reliability of expert testimony, applies not just to "scientific" testimony, but to all expert testimony. *Kuhmo Tire Co. Ltd., v. Carmichael*, 526 U.S. 137 (1999).

Furthermore, "[t]he proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (citing *Daubert*, 509 U.S. at 592). Thus, it is Plaintiffs who must prove that Dr. Lubit is qualified as an expert on the topics of his offered opinions and that his testimony meets the requirements of FRE 702. As demonstrated below, Plaintiffs cannot meet this burden with respect to certain opinions given by Dr. Lubit. Such testimony must be barred.

**B.      Dr. Lubit's Opinions Regarding District Policies and Procedures Should Be Excluded for Lack of Expertise, Improper Speculation and Insufficient Facts or Data in Support.**

To be admissible, a qualified expert's testimony must be "based on sufficient facts or data." *See* FRE 702(b). A court should exclude an expert's proposed testimony when it is either excessively speculative or unsupported by the sufficient facts. *See Hale Cty. A & M Transp., LLC v. City of Kansas City, Mo.*, 998 F. Supp. 2d 838, 844 (W.D. Mo. 2014) (*citing Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 720 (8th Cir.2012). Indeed, although expert testimony inherently involves some amount of educated guesswork, too much speculation is fatal to admission. *See Grp. Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 760 (8th Cir. 2003).

Overall, "a court should not admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. When the analytical gap between the data and proffered opinion is too great, the opinion must be excluded." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006) (internal citation omitted).

Dr. Lubit flatly states that he is "not an expert on school policy." *Exhibit A*, pg. 10. Nevertheless, Dr. Lubit offers multiple opinions on District's policies, far outside his stated expertise in child and adolescent psychiatry. For instance, Dr. Lubit launches into an entire paragraph analyzing portions of the District's discipline policy:

> It is also notable that the school document entitled student agenda, which appears to be a document given to students, stated that bullying can lead to detention, in school suspension, out of school suspension, expulsion etc.; the first incident of problematic conduct on a bus leads to a warning; fighting, vandalism and having dangerous materials on a bus may result in suspension from one day to a year. No punishment guidelines were stated for failing to have a doctor's note and parent's note and having medication in one's locker. It is notable that while punishments are laid out for the other problems there is no punishment listed for not having the doctor and parent's note, in "student agenda". Nevertheless, he was suspended for 4 ½ days on the first incident, rather than being given a warning. It is notable that a first incident on a bus gets a warning, serious violation (fighting vandalism,

dangerous materials) may only get one day. However, Lane received a 4 ½ day
suspension for having pills for his allergies and depression in his locker.

*Exhibit A*, pg. 10.

At a different point, Dr. Lubit offers a speculative-filled opinion on how the District conducted a discipline investigation of Lane Welchel:

> With the paint found in another child's bag ***the likelihood that Lane was involved approaches zero. It was not reasonable to suspect him.*** The school did not need to speak with Lane. The school could have asked his parents if there was any possibility he snuck out at night. There was no point to asking Lane if he had spray painted the swastikas. ***In the almost inconceivable possibility that he had been involved, he was not going to admit to it.***

*Exhibit A*, pgs. 10-11 (emphasis added). Similarly, Dr. Lubit later reiterates the same speculation as to Lane Welchel's culpability and the District's investigation:

> The school should have consulted with a child psychologist or child psychiatrist about how to deal with a child who was bullied and hospitalized with suicidal ideation, ***rather than rushing to interrogate him about a crime he almost certainly was not involved in***.

*Exhibit A*, pg. 11 (emphasis added).

Elsewhere, Dr. Lubit engages in more speculation, focusing on how the District may or may not have treated Lane Welchel differently than other, unknown and unnamed students:

> There is reason for concern that the school is treating him in a very harsh way, ***different from how other students would be treated***. ***It would be interesting to know*** what punishing the boy who spray painted the school, and the boys who engaged in bullying suffered.

*Exhibit A*, pg. 10 (emphasis added) (sic). And:

> ***It would be interesting to know*** if the child who made the false allegation that Lane was involved was punished.

*Exhibit A*, pg. 11 (emphasis added).

Throughout, Dr. Lubit offers no evidence for why he believes or concludes that there was a difference in treatment, nor does he offer any qualifications that would allow him to reach such

conclusions outside his stated expertise in the area of psychiatry. Indeed, at one point, Dr. Lubit even acknowledges his reliance on common sense: "***Common sense is sufficient to know*** that a child who is engaged in Judaism is very unlikely to be painting swastikas." *See Exhibit A*, pg. 10.

Court have reiterated that "where the subject matter is within the knowledge or experience of lay people, expert testimony is superfluous." *United States v. Coutentos*, 651 F.3d 809, 821 (8th Cir.2011) (*quoting Ellis v. Miller Oil Purchasing Co.*, 738 F.2d 269, 270 (8th Cir.1984) (per curiam)). "[C]ourts must guard against invading the province of the jury on a question which the jury was entirely capable of answering without the benefit of expert opinion." *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 725 (8th Cir. 2015) (internal citation omitted). In fact, if an expert's "conclusory opinion will provide little assistance to the jury," it may run afoul of FRE 403 "if the jury affords it more weight than warranted" because of the expert's specialties in other areas. *Id.*

Additionally, Dr. Lubit consistently reaches conclusions that run up against legal conclusions rather than psychiatric opinions:

> Both in my work as a forensic psychiatrist and as a political scientist with a PhD from Harvard, I am called on to opine on the likely motivations of individuals, by examining their behaviors. ***When a school violates multiple written policies including prompt investigation of bullying, support for the bullied child, conducting anti-bullying initiatives, and sanctioning those who so severely bullied a child that the child became depressed, suicidal and was admitted to the hospital, something is very wrong.*** The pattern suggests marked lack of concern for the child's welfare and lack of concern with bullying of this child. When the same authorities harshly punishes the victim for a violation that hurt no one, fails to speak with his therapist or any mental health professional to think about the potential negative impact on the child of punishing the child there is again indication of a marked lack of reasonable concern for the child's welfare. ***Or, more simply, if a school fails to follow its own rules in supporting a bullied child and punishing bullies, when the bullying was so severe the child became suicidal and required hospitalization, and then harshly punishes the victim for an offense that did not hurt anyone and which did not have punishment associated with it in the student handbook, it is clear that there is a marked***

> ***double standard. The child's rights to fair, reasonable and equal treatment under the rules was violated.***

*Exhibit A*, pg. 12 (emphasis added).

Opinions that are "phrased in terms of inadequately explored legal criteria" or that "merely tell the jury what result to reach" are not deemed helpful to the jury and thus, are not admissible under Rule 702. *See United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993). Ultimately, it is improper for Dr. Liubit to opine on legal culpability of the Defendants, rather than assess the factors that may have played a role in Lane Welchel's alleged suicide.

Finally, Dr. Lubit fails to identify in his report what specific documentation he reviewed in connection with the District's policies and procedures, and the District's application of such policies. He simply states that he reviewed "School Records" and then highlights a handful of items related to Lane Welchel's time at the District. *See Exhibit A*, pgs. 1, 8. He does not offer any other information about what records he reviewed – no dates or specific document titles or general categories.

Without identifying information, neither Defendants nor the Court have any ability to assess the scope of Dr. Lubit's review of "School Records" and whether his opinions have the necessary factual support. For instance, Dr. Lubit states that "I am not aware of any actions the school too to then protect Lane" and then reaches the conclusion that the District's failure to protect Lane Welchel affected his mental health. *See Exhibit A*, pgs. 1, 8. Absent a more detailed list of what information was reviewed, we do not know what "School Records" allowed him to reach such conclusions.

This stands in contrast to Dr. Lubit's summary of the medical records he reviewed. For those categories, Dr. Lubit includes relevant dates or date ranges as well as references to the

specific medical provider or facility to help identify what documents he is reviewing and summarizing. It allows

In regards to "School Records", however, we are left to conclude that Dr. Lubit did not review a sufficient amount of independent data as to how the District's policies and procedures were applied to Lane Welchel and other, unknown students. It appears, then, that he is relying on comments from Plaintiff. Although an expert may summarize evidence in reaching his conclusion, he may not rely on the comments or allegations of a witness as the sole basis for his opinion. *U.S. v. Whitted*, 11 F.3d 782, 785–86 (8th Cir.1993).

## Conclusion

For the forgoing reasons, Defendants respectfully request that this Court grant their Motion to Exclude Testimony and Opinions from Plaintiffs' Expert Dr. Roy Lubit, enter an Order excluding Dr. Lubit from giving testimony regarding the Defendants' policies and procedures as well as the Defendants' application of such policies and procedures at trial or any other hearing or motion in this case, and grant such other and further relief as this Court deems just and proper, and for such other relief as this Court deems just and proper.

Respectfully Submitted,

**MICKES O'TOOLE, LLC**

By: /s/ *Grant Wiens*
Thomas A. Mickes, #28555MO
tmickes@mickesotoole.com
Wendy D. Boggiano, #58929MO
wboggiano@mickesotoole.com
Grant Wiens, #65701MO
gwiens@mickesotoole.com
12444 Powerscourt Drive, Suite 400
St. Louis, MO 63131
Telephone: (314) 878-5600
Facsimile: (314) 878-5607

*Attorneys for Defendants*
*Cameron R-I School District, Board of*
*Education of Cameron R-I School District,*
*Dr. Matt Robinson, and Tiffani Collins*

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of October, 2019, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of filing to the following:

Christopher S. Dove, #64641MO
Daniel R. Zmijewski, #54675MO
DRZ Law, LLC
9229 Ward Parkway, Suite 370
Kansas City, MO 64114
chris@drzlawfirm.com
dan@drzlawfirm.com

*Attorneys for Plaintiffs*

/s/ *Grant Wiens*

00353666.1                    10

Case 5:19-cv-06012-FJG   Document 41   Filed 10/22/19   Page 10 of 10