UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| SUSAN WELCHEL, individually, and as personal representative of the ESTATE OF LANE GREY WELCHEL, <br><br> Plaintiffs, <br><br> v. <br><br> CAMERON R-I SCHOOL DISTRICT, BOARD OF EDUCATION OF CAMERON R-I SCHOOL DISTRICT, DR. MATT ROBINSON, and TIFFANI COLLINS, <br><br> Defendants. | Case No. 5:19-cv-06012-FJG |

## ORDER

Pending before the Court are (1) Plaintiffs' Motion to Strike Defendants' Expert and Expert Report for Failure to Comply with Scheduling Order (Doc. No. 39); and (2) Defendants' Motion to Exclude Certain Testimony and Opinions from Dr. Roy Lubit (Doc. No. 40).

**I.   Background**

Plaintiff Susan Welchel, individually and as the personal representative of the Estate of Lane Grey Welchel, filed a seven-count complaint against defendants (Doc. No. 1, filed on January 25, 2019). Plaintiffs assert that defendants failed to protect Lane Welchel from bullying and otherwise discriminated against him based on national origin and religion (specifically, his German Jewish heritage), ultimately resulting in Lane Welchel's suicide at age 15.

## II. Standard

"Federal Rule of Evidence 702 governs the admissibility of expert testimony and the trial judge screens such evidence for relevance and reliability." Wood v. Minnesota Mining & Mfg. Co., 112 F.3d 306, 309 (8th Cir. 1997). Relevant expert testimony should be admitted if: (1) it is "based on sufficient facts or data;" (2) it is "the product of reliable principles and methods;" and (3) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; see also Johnson v. Mead Johnson & Co., LLC, 754 F.3d 557, 561 (8th Cir. 2014).

In making its determination the district court may consider many factors. Id. at 562 (citing to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 593-94 (1993)). Among the non-exclusive factors listed by the Daubert Court are: (1) whether the expert's technique can be or has been tested; (2) whether the expert's "theory or technique has been subjected to peer review and/or publication;" (3) "the known or potential rate of error" for the technique; and (4) whether the technique is generally accepted. Daubert, 509 U.S. at 593-94. Generally, doubts as to the usefulness of the testimony should be resolved in favor of admissibility. Johnson, 754 F.3d at 562. "Further, district courts are admonished not to weigh or assess the correctness of competing expert opinions." Id. A court, however, should exclude an expert's proposed testimony when it is either excessively speculative or unsupported by sufficient facts. See Hale Cty. A & M Transp., LLC v. City of Kansas City, Mo., 998 F. Supp. 2d 838, 844 (W.D. Mo. 2014) (citing Onyiah v. St. Cloud State Univ., 684 F.3d 711, 720 (8th Cir.2012)).

## III. Analysis

**A.  Plaintiffs' Motion to Strike Defendants' Expert and Expert Report for Failure to Comply with Scheduling Order (Doc. No. 39)**

2

Plaintiffs argue that the Court should strike defendants' expert designation and report because it was filed too late under the Court's scheduling order then in place (Doc. No. 17). Plaintiffs filed their expert report on August 1, 2019, in compliance with the scheduling order deadline. Plaintiffs note that under the scheduling order, defendants' expert report was due on September 9, 2019. However, defendants filed their expert report on October 15, 2019, the deadline for filing rebuttal reports. Plaintiffs argue that defendants' failure to file an expert report on the September 9, 2019 deadline led plaintiffs to believe that defendants would not be designating an expert. Plaintiffs argue that defendants' action has unfairly and irreparably prejudiced them because the October 15, 2019 deadline was plaintiffs' opportunity to designate a rebuttal expert, and now that deadline has passed.

In response, defendants indicate that their expert report filed on October 15, 2019 was in the nature of a rebuttal report, not an independent expert report. Defendants note that their disclosure identifies their expert's (Dr. David M. Aversa) report as a rebuttal report, both in its title and text (Doc. No. 36). In addition, the report itself indicates that certain of its opinions rebut those offered by Plaintiffs' expert, Dr. Roy Lubit. <u>See generally</u> Doc. No. 36-1, pp. 14-23. Defendants note that the Court's Scheduling Order deadline for the filing of rebuttal expert reports was not limited to the filing of plaintiffs' rebuttal, but instead indicates that either sides' rebuttal reports could be filed on that date. Defendants' understanding is consistent with this Court's intent, and the Court agrees with Defendants that they were permitted to disclose a rebuttal expert on October 15, 2019.

The Court notes, however, as do Plaintiffs in their reply brief, that certain of the opinions of Dr. Aversa go beyond what might be expected in a rebuttal report. These opinions include (but are not limited to) that (1) Lane Welchel was "perhaps . . . in remission for his depression," Doc. No. 36-1, p. 21; (2) his parents' divorce scarred him psychologically, id.; (3) incarceration of his father and living with a step-father had a negative impact on him and led to conflict between he and his mother, id. pp. 21-22; and (4) drug and alcohol use is often involved when someone of Lane Welchel's age dies by suicide. Id. Plaintiffs complain that they have suffered irreparable prejudice due to defendants' failure to disclose these affirmative expert opinions (rather than rebuttal expert opinions) earlier than October 15, 2019. The Court notes, however, that discovery does not close until March 16, 2020. See Doc. No. 46. The Court believes that any prejudice arising from defense expert Dr. Aversa mixing certain rebuttal opinions with affirmative opinions can be rectified by allowing Plaintiffs to file a rebuttal expert report on or before **FEBRUARY 14, 2020**. Defendants may file a Daubert motion or other motion to strike the anticipated rebuttal expert report on or before **APRIL 15, 2020**.

Therefore, for the foregoing reasons, Plaintiffs' motion to strike (Doc. No. 39) is **DENIED.**

    **B.**    **Defendants' Motion to Exclude Certain Testimony and Opinions from Dr. Roy Lubit (Doc. No. 40)**

Defendants move for an order excluding certain testimony and opinions from Plaintiffs' expert witness Dr. Roy Lubit, as they are outside his expertise, are speculation, and/or are not supported with sufficient facts or data. Specifically, defendants argue that the Court should exclude: (1) Dr. Lubit's opinions regarding Defendants' policies and

4

Case 5:19-cv-06012-FJG   Document 52   Filed 01/14/20   Page 4 of 10

procedures, and (2) his opinions as to Defendants' application of its policies and procedures to Lane Welchel.

Defendants note that Dr. Lubit is a psychiatrist, who is board certified in psychiatry, child and adolescent psychiatry, and forensic psychiatry, who also has special experience in emotional trauma. Defendants do not appear to question Dr. Lubit's specialty in these areas. However, defendants indicate that Dr. Lubit's report strays into topics beyond his expertise, such as: (1) the District's discipline policies; (2) application of those discipline policies to various types of student misconduct; (3) the District's practice and procedure in investigating allegations of misconduct; (4) whether Lane Welchel was likely to commit certain infractions; (5) the District's anti-bullying policies; (6) the District's practice and procedure in investigating allegations of bullying; and (7) comparisons of the District's application of its policies to Lane Welchel as opposed to various unknown students. See Doc. No. 41, Ex. A, Report of Dr. Lubit, pp. 10-12. Beyond being outside of Dr. Lubit's areas of expertise, Defendants suggest that Dr. Lubit does not set forth sufficient facts or data in support of these opinions.

With respect to improper testimony regarding school policy (to which Dr. Lubit admits he lacks expertise, see Doc. No. 41, Ex. A, p. 10), Defendants gives the following example from the report, where Dr. Lubit opines:

> It is also notable that the school document entitled student agenda, which appears to be a document given to students, stated that bullying can lead to detention, in school suspension, out of school suspension, expulsion etc.; the first incident of problematic conduct on a bus leads to a warning; fighting, vandalism and having dangerous materials on a bus may result in suspension from one day to a year. No punishment guidelines were stated for failing to have a doctor's note and parent's note and having medication in one's locker. It is notable that while punishments are laid out for the other problems there is no punishment listed for not having the doctor and parent's note, in "student agenda". Nevertheless, he was suspended for 4

5

> ½ days on the first incident, rather than being given a warning. It is notable that a first incident on a bus gets a warning, serious violation (fighting vandalism, dangerous materials) may only get one day. However, Lane received a 4 ½ day suspension for having pills for his allergies and depression in his locker.

Doc. No. 41, Ex. A, p. 10.

Defendants also argue that Dr. Lubit has given several speculative opinions, without providing evidence for his conclusion and without offering any qualifications for giving such conclusions. Defendants give as examples of speculation the following statements, the alleged offending parts bolded and italicized:

> With the paint found in another child's bag ***the likelihood that Lane was involved approaches zero. It was not reasonable to suspect him.*** The school did not need to speak with Lane. The school could have asked his parents if there was any possibility he snuck out at night. There was no point to asking Lane if he had spray painted the swastikas. ***In the almost inconceivable possibility that he had been involved, he was not going to admit to it.***

Id. pp. 10-11 (emphasis added).

> The school should have consulted with a child psychologist or child psychiatrist about how to deal with a child who was bullied and hospitalized with suicidal ideation, ***rather than rushing to interrogate him about a crime he almost certainly was not involved in***.

Id. p. 11 (emphasis added).

> There is reason for concern that the school is treating him in a very harsh way, ***different from how other students would be treated***. ***It would be interesting to know*** what punishing the boy who spray painted the school, and the boys who engaged in bullying suffered.

Id. p. 10 (emphasis added).

> ***It would be interesting to know*** if the child who made the false allegation that Lane was involved was punished.

Id. p. 11 (emphasis added). And, finally:

6

> ***Common sense[1] is sufficient to know*** that a child who is engaged in Judaism is very unlikely to be painting swastikas.

Id., p. 10.

Defendants further complain that the following are improper legal conclusions,[2] invading the province of the jury:

> Both in my work as a forensic psychiatrist and as a political scientist with a PhD from Harvard, I am called on to opine on the likely motivations of individuals, by examining their behaviors. ***When a school violates multiple written policies including prompt investigation of bullying, support for the bullied child, conducting anti-bullying initiatives, and sanctioning those who so severely bullied a child that the child became depressed, suicidal and was admitted to the hospital, something is very wrong.*** The pattern suggests marked lack of concern for the child's welfare and lack of concern with bullying of this child. When the same authorities harshly punishes [sic] the victim for a violation that hurt no one, fails to speak with his therapist or any mental health professional to think about the potential negative impact on the child of punishing the child there is again indication of a marked lack of reasonable concern for the child's welfare. ***Or, more simply, if a school fails to follow its own rules in supporting a bullied child and punishing bullies, when the bullying was so severe the child became suicidal and required hospitalization, and then harshly punishes the victim for an offense that did not hurt anyone and which did not have punishment associated with it in the student handbook, it is clear that there is a marked double standard. The child's rights to fair, reasonable and equal treatment under the rules was violated.***

Doc. No. 41, Ex. A, p. 12 (emphasis added).

---

[1] Defendants further note, with respect to Dr. Lubit's "common sense" opinion, that "where the subject matter is within the knowledge or experience of lay people, expert testimony is superfluous." United States v. Coutentos, 651 F.3d 809, 821 (8th Cir.2011) (quoting Ellis v. Miller Oil Purchasing Co., 738 F.2d 269, 270 (8th Cir.1984) (per curiam)).

[2] "'Opinions that are phrased in terms of inadequately explored legal criteria or that merely tell the jury what result to reach are not deemed helpful to the jury,...and thus, are not admissible' under Rule 702 of the Federal Rules of Evidence." Jackson v. Scripps Media, Inc., 18-00440-CV-W-ODS, 2019 WL 6619859, at *3 (W.D. Mo. Dec. 5, 2019) (quoting United States v. Whitted, 11 F.3d 782, 785 (8th Cir. 1993)).

Finally, Defendants complain that Dr. Lubit did not identify the specific documentation he reviewed with respect to the District's policies and procedures and the District's application of same to Lane Welchel's case. Instead, Dr. Lubit indicates he reviewed "School Records," without providing information about what records were reviewed (such as dates, document titles, or general categories of information). See Doc. No. 41, Ex. A, pp. 1, 8. Defendants note that, without providing information identifying which records were reviewed by Dr. Lubit in order for him to provide his conclusions, Defendants and the Court are unable to assess whether Dr. Lubit's opinions are supported by the factual record.[3]

In response, Plaintiffs indicate that Defendants do not take into account the context of Dr. Lubit's expert report. Plaintiffs argue that, when the selective quotations are examined in context, Dr. Lubit is not opining about Defendants' policies, but rather is opining about the psychological harm (specifically, betrayal trauma as discussed in the expert report) inflicted upon Lane Welchel due to Defendants' actions. Plaintiffs argue that Dr. Lubit is not offering an opinion as to the adequacy of the school district's policies, but rather is offering an opinion that the Defendants' response (and absence of response in some instances) caused psychological trauma to Lane Welchel. Plaintiffs argue that in order to reach his conclusions, Dr. Lubit examined the facts regarding the Defendants' actions, and the statements referenced in Defendants' motion to strike amount to statements of fact supporting the conclusion that Defendants' actions contributed to Lane Welchel's psychological trauma.

---

[3] Defendants note that Dr. Lubit's review of the medical record, in contrast, provides specific information allowing the Court and Defendants to know what information Dr. Lubit relied upon in making his conclusions.

8

As noted by Defendants in their reply, however, Plaintiffs cite to no case law in their response. Again, Defendants indicate that Dr. Lubit makes conclusory statements, which are all either based on speculation, within the knowledge or a lay person, are overt legal conclusions, or fall outside his expertise, at pages 10 through 12 of his report, including that: (1) "the likelihood that Lane was involved [in the swastika painting incident] approaches zero. It was not reasonable to suspect him"; (2) "In the almost inconceivable possibility that [Lane Welchel] had been involved [in the swastika incident], he was not going to admit it"; (3) the school district should have consulted with a child psychologist, "rather than rushing to interrogate him about a crime he almost certainly was not involved in"; (4) the school district treated him "different from how other students would be treated. It would be interesting to know" the punishments of other unnamed students; (5) "It would be interesting to know if the child who made the false allegation that Lane was involved was punished"; and that (6) "Common sense is sufficient to know that a child who is engaged in Judaism is very unlikely to be painting swastikas." Doc. No. 41, Ex. A, pp. 10-12.

Furthermore, Plaintiffs' response does not address Defendants' arguments that Dr. Lubit did not identify the portions of the record upon which he was relying to speak about the Defendants' policies and their application as to Lane Welchel. This matters because Dr. Lubit states in his report "I am not aware of any actions the school took to then protect Lane," and then concludes that the District's failure to protect Lane Welchel caused psychological harm. See Doc. No. 41, Ex. A, pp. 1, 8. Defendants argue that without a list of the information reviewed by Dr. Lubit, they (and the Court) are unable to tell what records were reviewed which allowed Dr. Lubit to reach such a conclusion.

9

Case 5:19-cv-06012-FJG   Document 52   Filed 01/14/20   Page 9 of 10

The Court finds that, for the reasons stated by Defendants, the Motion to Exclude Certain Testimony and Opinions for Dr. Roy Lubit (Doc. No. 40) is **GRANTED**. Dr. Lubit is excluded from giving opinion testimony at trial or any other proceeding regarding Defendants' policies and procedures as well as Defendants' application of its policies and procedures toward Lane Welchel. This Order does not preclude Dr. Lubit from testifying about psychological trauma suffered by Lane Welchel and potential causes of that trauma, so long as such testimony does not stray into the improper opinion testimony identified by Defendants.

## IV. Conclusion

Therefore, for the foregoing reasons, (1) Plaintiffs' Motion to Strike Defendants' Expert and Expert Report for Failure to Comply with Scheduling Order (Doc. No. 39) is **DENIED**; and (2) Defendants' Motion to Exclude Certain Testimony and Opinions from Dr. Roy Lubit (Doc. No. 40) is **GRANTED**. As discussed above, Plaintiffs are allowed to file a rebuttal expert report on or before **FEBRUARY 14, 2020**. Defendants may file a Daubert motion or other motion to strike Plaintiffs' anticipated rebuttal expert report on or before **APRIL 15, 2020**.

**IT IS SO ORDERED.**

Date: January 14, 2020                          **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                       Fernando J. Gaitan, Jr.
                                                      United States District Judge